UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

JILL THOMAS                                                                                    PLAINTIFF

v.                                                                                    NO. 3:12-CV-00286-S

PATRICK R. DONAHOE, POSTMASTER GENERAL,                              DEFENDANT
UNITED STATES POSTAL SERVICE

## MEMORANDUM OPINION

This matter is before the court on the motion of the Defendant, Patrick R. Donahoe, Postmaster General, United States Postal Service ("USPS"), for summary judgment, DN 27-1, as to all counts of the Complaint of the Plaintiff, Jill Thomas ("Thomas"). DN 1. Fully briefed, the matter is now ripe for adjudication. Having considered the parties' respective positions, the court concludes that there are no material issues of fact in dispute. For the reasons set forth below, the court will grant Defendants' motion for summary judgment.

## I.

Plaintiff, Jill Thomas, began working for USPS in 1994. In 2009, she began working at the USPS Okolona branch in Louisville, Kentucky. William G. Roadhouse ("Roadhouse") managed the Okolona branch up until Christopher Salings ("Salings") took over, around the time Thomas stopped working at USPS and began receiving worker's compensation. Lloyd Gant ("Gant") directly supervised Thomas while she worked at the Okolona branch. Thomas is a female who had participated to some extent in an Equal Employment Opportunity Commission process prior to the events in question ("prior EEO activity"). Her claims revolve around the following undisputed facts. Because the parties have addressed Plaintiff's claims by incident, so will the court.

**Overtime Request**

Employees at the Okolona branch typically signed up on the Overtime Desire List ("ODL") in order to request overtime. Gant decided what employees would work overtime during a given period. The employees' Collective Bargaining agreement states that:

> When during the quarter the need for overtime arises, employees with the *necessary skills* having listed their names will be selected in order of the seniority on a rotating basis. . . . If the voluntary "Overtime Desire" list does not provide sufficient qualified people, qualified full-time regular employees not on the list may be required to work overtime on a rotating basis with the first opportunity assigned to the junior employee.

DN 27-3, p. 528 (emphasis added). A scheme clerk is a postal worker who is scheme qualified – that he or she has memorized the addresses within the assigned zip code. *Id*. p. 176. Some portion of each overtime shift from August to December 2010 involved work that had to be performed by a scheme-qualified employee. *Id*.

Thomas signed the ODL to work overtime from August to December 2010. Gant assigned Thomas to work 76.18 overtime hours during this period based on her signing the ODL. DN 27-3, p. 248-78. She was not, however, scheme qualified, and her last scheme training was in 1998. *Id*. at 295. Gant states that his decision to bypass Thomas for *more* overtime was the fact that she was not scheme qualified. *Id*. at 176.

Rodney Burton did not sign the ODL but was assigned to and worked 133.15 overtime hours from August to December 2010. *Id*. at 299-313. He was scheme qualified, and his last scheme training was in April 2010. *Id*. at 298. Carol Howard worked 89.31 overtime hours from August to December 2010. *Id*. at 376-90. She was scheme qualified, and her last scheme training was in 2004. *Id*. at 375. Jamesella Howard worked only 35.88 overtime hours from August to December 2010. *Id*. at 393-411. She was not scheme qualified, and USPS had never provided her scheme training.

**Spreading DPS Mail**

On December 16, 2010, Roadhouse ordered Thomas to spread DPS mail instead of putting stamps on customers' mail. She was not a "distribution clerk." However, her job description states that she "may . . . distribute mail as required." *Id*. at 436. Roadhouse instructed her to spread DPS mail because "she was needed to help get the [mail] carriers out on time." *Id*. at 200.

**Paged to Window**

Thomas agrees that her job required her to be at the customer window of the Okolona branch and that Gant was authorized to page her to it when she was needed. DN 34. She states, however:

> Lloyd [Gant] never paged me to the window unless he was trying to aggravate me. One time he paged me to the window and - well, actually one time he walked past me and stopped and said, "Oh, they need you at the window. There's a line out the door," blah, blah, blah. "You need to get up there to the window." So me and Don England both jump up and go running up there, and there was nobody in line. There was one customer at the window.

DN 27-1, p. 18. Don England is a male with no prior EEO activity. DN 27-3, p. 315.

**Confrontation with Carol Howard**

On one occasion, Carol Howard yelled at Thomas after learning that Thomas had contacted their union regarding vacation scheduling; an act Howard believed caused the union to deny her own vacation request. DN 27-3, p. 237. Howard was aware of Thomas's complaints to the union because they were "common knowledge," in her own words, that "[n]o one had to tell [her]." *Id*. Thomas alleges, however, that Gant gave Howard this "misinformation" in order to incite the confrontation. DN 1.

**Gant's Inappropriate Comments**

Thomas alleges that, on unspecified dates, Gant made inappropriate comments and guttural noises about women in line at the customer window and, on one occasion, asked "if that was the woman who was suing the Post Office." DN 1; DN 34. On the latter occasion, Thomas alleges that Gant grunted "uhm, uhm, uhm" about a woman in line, to which she responded, "Lloyd, I'm standing right here." DN 27-1, p. 6; DN 34. By her account, Gant then asked Don England, "Isn't that the woman that sued the post office?" *Id*.

Gant contends that, on the day in question, he was simply observing a woman whom he believed was suing USPS over an alleged slip and fall. DN 27-3, p. 181. He claims to have called Don England to come "see if the woman in line was the woman who was suing the Postal Service after having an accident" because England was the person she reported her fall to. *Id*. England indicated that it was not the same woman. *Id*.

**Request for 204-B Training**

Thomas claims she requested that Roadhouse consider her for 204-B training – training that would allow her to act as s 204-B temporary manager or supervisor. DN 34. Thomas was never given such training, but her request was never rejected. DN 27-3, p. 56.

Roadhouse asserts that Thomas actually requested help becoming an "Officer in Charge" in Indiana, not Okolona, to which he responded by giving her names of two people she could call about potential 204-B work in Indiana. *Id*. at 201. Thomas believed, however, that Roadhouse would contact these two individuals and pursue the 204-B training at the Okolona branch on her behalf.

Roadhouse consulted Gant about Thomas's request to work as a "204-B" in Indiana. Gant indicates that the request was not immediately considered because "staffing was low and all

the window clerks were needed to work their positions" during that time. *Id*. at 183. Moreover, he felt she was not fit for the position because she "[wa]s often off work for long periods of time, ha[d] a history of not getting along with others and she d[id] not like to take instructions." *Id.*

During the period in question, Julie Brinson received 204-B training at the Okolona branch. *Id*. at 203. Roadhouse approved Brinson for training because she was "an excellent worker, that learn[ed] quick, and [he thought] could do well in management." *Id*. Brinson is a female and had prior EEO activity. *Id*. at 113. And unlike Thomas, she requested to be trained and work as a 204-B in Okolona, not Indiana. *Id*. at 203

**Continuation of Pay and Pay Adjustment Paperwork, and Pay Adjustment Failure**

Thomas suffered an injury on the job on December 16, 2010, after which she filed a form 3971 and accident report. The Injury Compensation Office instructed that if Thomas did not give proper documentation of her injury, she would be listed as absent without leave ("AWOL") for any time she missed. DN 27-3, p. 452. Gant claims that he asked Thomas for documentation from her physician for the days of December 27-30, and that she did not provide it. *Id*. at 184. The Injury Compensation Office marked Thomas as AWOL for those days because she missed work and did not provide proof that she was under a doctor's care. *Id*. at 219. Nothing in the record shows that Thomas has ever provided the requested documentation. *Id*. Thomas alleges that Gant and Salings were slow to adjust her AWOL status and give her a pay adjustment for the mistake, and that Gant intentionally gave her improper paperwork. Both men suggest that any delays in the adjustment of her status were her own doing. *Id*. at 184, 220; *see also id.* at 452.

Regarding Continuation of Pay ("COP"), employees that suffer a traumatic injury are, first, given Sick or Annual leave for the first three days following the injury; then, once COP is approved for that time, the leave is credited back to the employee's leave balance. *Id*. at 185.

The Department of Labor and Injury Compensation make all COP and pay adjustment decisions. *Id*. Thomas never received such a pay adjustment for December 16th or 17th of 2010, her first two days after the injury. *Id*. at 220. Salings explains that there was initial confusion regarding the paperwork necessary to document her injury – that she originally reported her injury as a recurrence and later claimed it as a new injury, each requiring different for *Id*. at 218. When Thomas later submitted her December 16 and 17 pay stubs for adjustment, Salings tried to contact Thomas several times about an issue with the stubs. *Id*. By the time Thomas responded, Salings and Gant were unable to access the program that would allow such an adjustment. *Id*. at 220.

### N-TOL Letters

USPS issued Thomas an N-TOL letter – a warning letter – on April 18, 2011 for failure to follow instructions and improper conduct. *Id*. at 503. The letter specifically alleged that Thomas had 1) failed to turn over around 250 pieces of mail, all of which were union election ballots, to an Election Services Solutions representative, 2) disclosed private and confidential information to a union affiliate not entitled to know such information, 3) ignored management instructions by accepting more than ten pieces of mail without postage, and 4) had a confrontational attitude about spreading DPS mail. *Id*. at 502-03. USPS issued her another N-TOL letter on March 10, 2011, the contents of which are not a part of the record. *Id*. at 510. USPS eventually downgraded both letters to the status of "Official Job Discussion." *Id*. at 625-26.

Based on all of the foregoing events, Thomas filed this action against USPS alleging that USPS discriminated against her based on her gender, retaliated against her for her prior EEO activity, and subjected her to a hostile work environment based on her gender, all in violation of

Title VII of the Civil Rights Act of 1963, 42 U.S.C. § 2002(e) *et seq.* (Count I). DN 1. Defendant filed a motion for summary judgment on each count of the First Amended Complaint. We will now address the merits of the motion.

**II.**

A court may grant a motion for summary judgment if it finds that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962). However, the nonmoving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party cannot rely upon the assertions in its pleadings; rather that party must come forward with probative evidence, such as sworn affidavits, to support its clai *Celotex*, 477 U.S. at 324. It must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will

be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.

**III.**

Defendant contends that it is entitled to summary judgment on each count of the Complaint. We address these claims below.

**A. Count I: United States Postal Service's Violations of Title VII of the Civil Rights Act**

Plaintiff alleges that Defendant engaged in conduct on numerous occasions that, considered individually and together, violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. DN 1. From what the Court can glean from the record, Plaintiff alleges that this conduct violated the rights secured to her by Title VII in three distinct ways: 1) that Defendant discriminated against her on the basis of her gender; 2) that Defendant retaliated against her for her prior EEO activity; and 3) that the Defendant subjected her to a hostile work environment based upon her gender. *See* DN 1, p. 5; DN 34. These allegations, however, are lacking in both legal and evidentiary support.

**1. Gender Discrimination and Retaliation**

In order to establish a gender discrimination claim under Title VII, a plaintiff must produce either direct or circumstantial evidence of discrimination. *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004). Direct evidence is evidence that alone requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions – such as an explicit statement that she was not given overtime because she was a woman. *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir. 1999). But where, as in this case, a plaintiff lacks direct evidence of discriminatory intent, he or she may establish a prima facie case of discrimination through the use of circumstantial evidence by showing that: 1) she is a member of a protected class; 2) she was subjected to adverse employment action; 3) she

was qualified for the position or opportunity; and 4) similarly situated non-protected individuals were treated more favorably. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003). Similarly, in order to establish a prima facie case of retaliation under Title VII, a plaintiff must show that: 1) she engaged in activity protected by Title VII; 2) this exercise of protected rights was known to defendant; 3) the defendant thereafter took adverse employment action against the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action. *See Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.), *cert. denied*, 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990).[1]

If a plaintiff is able to establish a prima facie case of retaliation or discrimination, the burden of production of evidence shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for that action. *Id*; *see also Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 720 (6th Cir. 2006). And if the employer carries this burden, the plaintiff must prove that the legitimate reasons offered were in fact a pretext for discrimination. *Grizzell*, 461 F.3d at 720. A plaintiff can show pretext by establishing that 1) the proffered reasons had no basis *in fact,* 2) that the proffered reasons did not actually motivate the action, or 3) that they were insufficient to motivate discharge. *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

To survive at the summary judgment stage, the evidence the plaintiff submits must be that from which a reasonable jury could conclude *both* that she has established a prima facie case of discrimination or retaliation *and* that the defendant's legitimate, nondiscriminatory reason for its action is pretext for unlawful discrimination or retaliation. *Vincent v. Brewer Co.*, 514 F.3d 489, 494 (6th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th

---

[1] The parties do not dispute that Gant was aware of Ms. Thomas's prior EEO activity. DN 27-1.

Cir.2000)); *Canitia*, 903 F.2d at 1066. For each of the incidents Thomas points to in the Complaint, she fails to put forth evidence of either component.[2] Her vague and unsubstantiated assertions may be appropriate to state a claim in a complaint but they are insufficient to satisfy her burden on summary judgment. We now turn to the events in question.[3]

**Denial of Overtime**

Thomas has failed to establish that USPS discriminated or retaliated against her by allegedly denying her overtime in favor of Rodney Burton, a male who had not engaged protected activity. DN 34. Curiously, she points to *nothing* in the record to support that she and Burton were similarly situated or that there was a causal connection between the denial and her prior EEO activity. But this comes as no surprise when confronted with the fact that the overtime in question had to be performed by an employee that was "scheme-qualified" – something that Burton, but not Thomas, had obtained. DN 27-3, pg. 176. Indeed, USPS has even shown that Thomas was actually given more overtime than her only similarly-situated co-worker, a female that was not scheme qualified, at the Okolona branch. DN 27-1. Her conjecture cannot overcome record evidence; it follows that she has not met the burden required for this claim to survive summary judgment.

---

[2] In fact, Plantiff's Response to Motion for Summary Judgment does not once cite to the record, in utter disregard of Fed. R. Civ. P. 56(c)'s requirement that:
    A party asserting that afact cannot be or is genuinely disputed must support the assertion by:
        **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes only), admissions, interrogatory answers, or other materials; or
        **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
The Court indulges many of Plaintiff's arguments nonetheless.

[3] The Court will not discuss item 8.j. or k. in Plaintiff's Complaint – USPS's alleged changing of Ms. Thomas's CA-17 and a September, 2010 N-TOL – because Plaintiff choose not to tender any response to Defendant's showing that no genuine issue existed on those grounds. *See* DN 1; DN 34; DN 27-1. After Defendant has shown that there is an absence of evidence to support the Plaintiff's case, as Defendant has, DN 27-1, pp. 22-23, Plaintiff may not "rest upon its . . . pleadings." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009) (*citing* Fed. R. Civ. P. 56).

**Ordered to Spread DPS Mail and Paged to Window**

Thomas has also failed to show how USPS's requiring her to spread DPS mail or paging her to a customer window were adverse employment actions. In the discrimination context, adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998). It should involve change that is "more disruptive than a mere inconvenience or alteration of job responsibilities." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007). In the retaliation context, however, an adverse employment action is anything that might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations omitted). Yet, in either case, the employee is not immunized from "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id*. (citations omitted).

But USPS has come forth with uncontroverted evidence that Thomas's job description included "distribut[ing] mail as required." DN 27-3. And Thomas agrees that her job required her to be at the customer window and that Gant was authorized to page her to it. DN 34. Thomas has presented no record evidence to suggest that being ordered to perform tasks within her job responsibilities was anything more than a common, minor annoyance of the workplace. More importantly, she has shown no evidence that she ordered to perform these tasks because of status as a female or prior EEO activity. There is no genuine issue on these claims

**Yelled at By Co-worker**

Nor has Thomas presented any evidence supporting that she was discriminated and retaliated against when Gant allegedly misinformed Carol Howard that Thomas had complained

to their union, causing Howard to confront Thomas. In fact, the record before the court on summary judgment shows that Howard had no such discussion with Gant about Thomas's complaints, but, rather, that Thomas's actions were "common knowledge." DN 27-3, p. 237. Thomas points to no contrary evidence. Thus, even assuming that Gant's alleged action could be characterized as an adverse employment action, Thomas has not no set forth specific facts to rebut the demonstrated absence of evidence to support her claim on these grounds.

**Inappropriate Comments and Noises About Women in Line**

Thomas does not contest that the comment and noises Gant allegedly made directed at women standing in line were not, alone, an instance of discrimination or retaliation. DN 34. Accordingly, the Court will reserve consideration of these facts for Thomas's hostile work environment claim.

**USPS's Failure to Consider Thomas's Request For 204-B Training**

Thomas has failed to establish that Roadhouse's failure to consider her 204-B training request was discriminatory because she has not shown that similarly situated non-protected individuals were treated more favorably. Roadhouse only approved one person for 204-B training during the time in question: Julie Brinson, a female that had also engaged in prior EEO activity.[4] Brinson is unquestionably a member of Thomas's protected class. Moreover, Thomas cites no evidence suggesting a causal connection between her EEO activity and the alleged failure.

Even assuming arguendo that Thomas has presented a prima facie case of discrimination and retaliation arising from this failure, she has put forth no evidence to rebut USPS's legitimate,

---

[4] The Court does not consider Ms. Thomas's arguments about disability discrimination, DN 34, p. 8, because such a claim is not actionable under Title VII. *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 881, n.9 (6th Cir. 1996).

non-discriminatory reasons for its decision not to approve her request. USPS cites affidavits stating not only that Brinson had a good track-record of employment and was an ideal candidate for the training, but also that Thomas was not an ideal candidate for the training because of her problems taking instruction, arriving on time, and following protocol. DN 27-3, pp. 183, 203. Thomas has neither argued nor demonstrated pretext. Accordingly, she has failed to satisfy her burden on summary judgment.

**USPS Improperly Completed Paperwork for Thomas's Continuation of Pay and Pay Adjustment and Failed to Give Thomas a Pay Adjustment**

Thomas has also failed to establish that she was discriminated or retaliated against when she was "carried as AWOL [absent without leave] in" USPS's system as a result of improper Continuation of Pay ("COP") paperwork or when USPS failed to give her a pay adjustment. Assuming, without deciding, that USPS took these actions, and that they qualify as adverse employment actions, she points to *no evidence* suggesting that these actions were motivated by or even related to her gender or EEO activity. She simply asserts that mistakes were made and that they were Gant or Saling's fault. But her claims cannot stand on unsupported suggestions at this stage, especially where USPS *has* provided *evidence* that her being carried as AWOL and lack of a pay adjustment were a direct result of her own failures – namely, her refusal to submit physician documentation and untimely response to Saling's requests. DN 27-1, p. 21. Thus, they must fall.

**USPS Improperly Issued N-TOL Warning Letters to Thomas**

Lastly, Thomas has not established that USPS discriminated or retaliated against her by issuing her an N-TOL #3 and an N-TOL #4 for failing to follow instructions. Assuming arguendo that Thomas's unsupported allegations concerning the basis of the letters are true, she cites no circumstantial or direct evidence of discrimination or of any causal connection between

her EEO activity and the letters. Thus, Fed. R. Civ. P. 56 provides that Plaintiff has presented no genuine issue of fact on the letters. Fed. R. Civ. P. 56(c)(1)(mandating that a party asserting that a fact is genuinely disputed cite to particular parts of materials in the record).

Accordingly, and considering Plaintiff did not cite to the record once in her response, the Court does not hesitate to find that there are no genuine issues of fact as whether Thomas was subject to adverse employment action based on her gender or prior EEO activity. Defendant's motion is granted to that extent, and the Court will now consider her claim for hostile work environment.

### 2. Hostile Work Environment

A hostile work environment claim based on gender is actionable under Title VII when a plaintiff can demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (citations omitted). To survive a motion for summary judgment, a plaintiff must establish that 1) she is a member of a protected class, 2) she was subjected to harassment, either through words or actions, based on the characteristic defining her protected class, 3) the harassment had the effect to of unreasonably interfering with the plaintiff's work performance and creating an objectively intimidating, hostile, or offensive work environment, and 4) there exists some basis for liability on the party of the employer. *See Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir.2008) (applying standard to claim of hostile work environment based on sex).

In assessing Plaintiff's claim, the Court must consider her work environment in light of the totality of circumstances alleged, rather than any individual acts of hostility. *See Bowman v.*

*Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir.2000); *Williams v. General Motors Corp.,* 187 F.3d 553, 562 (6th Cir.1999). Record evidence of whether the conduct at issue is so severe and pervasive "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993). However, "'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citations omitted). Title VII was not meant to be, and this Court must ensure that it does not become a "general civility code." *Id.* at 788 (citing *Oncale v. Sundowner Offshore Servs. Inc.*, 523 U.S. 75, 80 (1998))

Non-sexual conduct that is based upon sex may create a hostile environment where the plaintiff shows that, but for her sex, she would not have been the object of harassment. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463. "The critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Id*. at 464 (*citing Oncale*, 523 U.S. at 80). But Thomas has made no such showing.

Thomas references a bevy of "issues" and argues that, taken as a whole, they "creat[ed] a hostile work environment and harassment." DN 34, p. 6. But almost all of the alleged harassing acts cannot be considered in the hostile environment analysis because Thomas has not shown any evidence – direct, circumstantial, or otherwise – that the alleged harassment was based upon her status as a female. The only issue that, viewing all evidence in favor of Plaintiff, could be construed as sex-based harassment is Gant's alleged practice of making "guttural sounds and

sexual comments" in Thomas's presence about women in line at the clerk's window. DN 34, pp. 2, 7. Assuming arguendo that Thomas had cited evidence of this conduct, it is still insufficient to sustain her hostile work environment claim at this stage. *See Burnett v. Tyco Corp.*, 203 F.3d 980, 983-84 (6th Cir. 2000).

The conduct alleged is considerably less severe and pervasive than that found insufficient to create a hostile work environment under the Sixth Circuit's jurisprudence. In *Burnett v. Tyco Corp.*, the court affirmed summary judgment in favor of the employer despite multiple employee affidavits alleging harassing behavior by a supervisor and three specific allegations of harassment occurring over a sixth month period including: placement of a pack of cigarettes inside the plaintiff's tank top brassiere strap, a reference to the plaintiff losing her virginity, and a sexual reference about the plaintiff's Christmas sweater. 203 F.3d 980, 981, 984-85. The incidents, it held, were offensive but not severe or pervasive enough to constitute a hostile work environment. *Id*. at 984-85. And in *Black v. Zaring Homes Inc.*, the court affirmed summary judgment in favor of an employer despite four months of sexual and degrading comments. 104 F.3d 822, 827 (1997). That most of the comments were not directed at the plaintiff, it explained, contributed to the conclusion that there was no hostile environment. *Id*. at 826 (*citing Brown v. Hot, Sexy and Safer Productions, Inc*., 68 F.3d 525, 541 (1st Cir.1995) (finding no hostile environment in part because the sexual comments were not directed at the plaintiffs)).

Here, Thomas alleges that Gant's alleged noises and comments were made "within an ear shot" of her. DN 34, p. 2. This conduct was plainly not directed at Thomas. Moreover, while Thomas's allegations are vague, it appears this may have happened as few as one time. *See* DN 1; DN 34 (referring to "unspecified dates" but only detailing one occurrence). These comments and noises – unspecified sexual comments and guttural noise about a woman in line, followed by

a question of whether "that was the woman . . . suing the Post Office?" – appear to have been offhand, isolated and "mere[ly] offensive." *Faragher*, 524 U.S. at 788. Nor does homas present any evidence that this was a regular occurrence; in fact, the record establishes that none of the other females that were "within an ear shot" found this incident to be objectively harassing. DN 27-3, p. 621-22. Therefore, because the Court is constrained to find facts supported by record evidence that establish a hostile work environment, Thomas's claim must fail at this stage.

**IV.**

For the reasons set forth herein, Defendant's motion for summary judgment, DN 27-1, will be granted as to all counts of the Complaint. DN 1. A separate order and judgment will be entered this date in accordance with this Memorandum Opinion dismissing this action with prejudice.